IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL BUSINESS
MACHINES CORPORATION,

            **Plaintiff,**

    -vs.-

PLATFORM SOLUTIONS, INC.,

            **Defendant.**

Civil Action No. 06-CV-13565 (SCR)

## PLAINTIFF AND COUNTERCLAIM DEFENDANT INTERNATIONAL BUSINESS MACHINES CORPORATION'S REPLY TO COUNTERCLAIMS

Plaintiff International Business Machines Corporation ("IBM"), by and through its attorneys Quinn Emanuel Urquhart Oliver and Hedges, LLP, as and for its Reply to the Counterclaims ("Counterclaims") of Defendant Platform Solutions, Inc. ("PSI"), states as follows:

### NATURE OF THE ACTION

1.     IBM admits that this action includes the causes of action set forth in PSI's Counterclaims; avers that the action also includes the causes of action set forth in IBM's Complaint; and denies the remaining allegations of Paragraph 1.

2.     Denied.

3.     IBM admits that mainframe computers and operating systems for such computers, including IBM's zSeries servers and their predecessors and operating systems that run on those servers, are among the computers and operating systems that support the mission-critical data

processing needs of a wide range of businesses and other entities; further admits that such

mission-critical data processing is one of the uses to which mainframe computers and operating

systems for such computers, as well as other computers and operating systems, are put; and

denies the remaining allegations of Paragraph 3.

4.      IBM admits that it describes its zSeries servers as "mainframes"; avers that its

zSeries servers compete with a wide range of servers and other computers; further avers that

IBM is aware of estimates that $1 trillion worth of applications have been written in the COBOL

programming language; further avers that the COBOL programming language is a multi-

platform language available on many different computer systems, including many non-

mainframe computer systems, and that COBOL facilitates the movement of applications among

such different systems; and denies the remaining allegations of Paragraph 4.

5.      IBM admits that, for any operating system to be able to run on any particular

computer system, including a mainframe computer system, that operating system must adhere to

the hardware instruction set of that computer system, and that, to run on any particular operating

system, a particular application must adhere to the interfaces presented by that operating system;

and denies the remaining allegations of Paragraph 5.

6.      IBM admits that it has faced competition historically, including competition from

manufacturers of what PSI refers to as "IBM-compatible" mainframe computers; avers that IBM

continues to face competition today and that its zSeries servers and the operating systems that

run on those servers compete with a wide range of servers and other computers and the operating

systems that run on those servers and other computers; further admits that IBM has licensed what

PSI refers to in its Counterclaims as IBM "mainframe operating systems" for use on certain

computers not manufactured by IBM, including the computers listed on IBM's website at www-

03.ibm.com/servers/eserver/zseries/library/swpricinfo/hardware.html; further admits that IBM

has provided third-party developers with certain licenses, technical information, and technical

support relating to certain IBM computers and operating systems, including OS/390; further

admits that Amdahl Corporation ("Amdahl") became a wholly-owned subsidiary of Fujitsu

Limited ("Fujitsu") and the combined company thereafter announced in or about October 2000

that it had decided not to develop a 64-bit processor, but would continue to deliver servers in

inventory and upgrades and to service its Millennium processors for customers using them;

further admits that Hitachi Data Systems ("Hitachi") announced in or about March 2000 that it

would discontinue sales of its Trinium and Pilot servers to new customers and would continue to

offer maintenance and service to existing customers and system upgrades to existing Trinium

users; refers to public statements by Fujitsu and Hitachi, including statements on their websites,

for a fair and accurate summary of those companies' current activities; and denies the remaining

allegations of Paragraph 6.

      7.    IBM admits that PSI is marketing computer systems that PSI claims will run IBM

operating systems developed by IBM to run on IBM zSeries servers and their predecessors and

applications and data created for use with such operating systems and that PSI claims will also

run other operating systems, such as Linux, Unix, and Windows; avers that PSI's allegations

concerning PSI's company history, PSI's licensing of Amdahl technology, PSI's relationship with

Hewlett-Packard Company, and the claimed capabilities of PSI's emulator systems appear to be

consistent with certain statements that appear on PSI's website and in PSI's public presentations,

but denies those allegations for lack of knowledge or information sufficient to form a belief as to

the truth thereof; and denies the remaining allegations of Paragraph 7.

8.     IBM avers that PSI has inappropriately defined z/OS to include various other IBM operating systems; and denies the remaining allegations of Paragraph 8.

9.     Denied.

10.     Denied.

## THE PARTIES

11.     IBM admits that PSI's allegations concerning PSI's corporate existence and principal place of business are consistent with public information; and otherwise denies the allegations of Paragraph 11.

12.     Admitted.

13.     IBM admits that IBM transacts business in interstate commerce; further admits that PSI claims to transact business in interstate and foreign commerce but denies that allegation for lack of knowledge or information sufficient to form a belief as to the truth thereof; and denies the remaining allegations of Paragraph 13.

## JURISDICTION

14.     IBM denies PSI's allegation with respect to 28 U.S.C. § 2001; and admits the remaining allegations of Paragraph 14.

15.     Admitted.

16.     Admitted.

17.     Admitted.

## VENUE

18.     Admitted.

## FACTUAL ALLEGATIONS

19.    Denied.

20.    IBM admits that mainframe computers, like other computers, can be large, expensive, and powerful; further admits that mainframe computers are among the computers used by corporations and government entities for high-volume and mission-critical data processing needs, as well as for other purposes; further admits that custom-written software is sometimes used on mainframe computers; and denies the remaining allegations of Paragraph 20.

21.    Denied.

22.    IBM admits that it is aware of estimates that $1 trillion worth of applications have been written in the COBOL programming language; avers that the COBOL programming language is a multi-platform language available on many different computer systems, including many non-mainframe computer systems, and that COBOL facilitates the movement of applications among such different systems; and denies the remaining allegations of Paragraph 22.

23.    Denied.

24.    Denied.

25.    Denied.

26.    IBM admits that it knows of no other company today that is developing new computers that are capable, lawfully, of running IBM operating systems developed by IBM for use on IBM's zSeries servers and their predecessors; further admits that IBM sells such computers; and denies the remaining allegations of Paragraph 26.

27.    Denied.

28.    IBM admits that Unisys Corporation ("Unisys") markets a line of servers under the names ClearPath Plus Libra Series and ClearPath Plus Dorado Series, that Bull markets a line of servers under the name DPS 9000, and that IBM and a number of other manufacturers market servers and other computers that they call "mainframes" or that they refer to with phrases such as "mainframe-class"; further admits that IBM's zSeries servers compete with these Unisys and Bull servers and other computers from Unisys and Bull and a host of other servers and computers from IBM and other manufacturers; refers to its public statements concerning Linux, Unix, and Windows for a fair and accurate summary of IBM's statements in their appropriate context; and denies the remaining allegations of Paragraph 28.

29.    Denied.

30.    IBM admits that operating systems are necessary for any computer, including a mainframe computer, to operate and that operating systems control the computer's operational resources and allow application software to run on the computer; further admits that OS/390 and z/OS are IBM operating systems, certain levels of which run on certain levels of IBM S/390 and zSeries servers, as well as other servers, and that, in the ordinary course of its business, IBM withdrew marketing for OS/390 V2R10, the latest version of OS/390, on December 17, 2002, announced on August 5, 2003 that it would discontinue service for OS/390 V2R10 as of September 30, 2004, and discontinued warranty service for OS/390 V2R10 on September 30, 2004; avers that extended service support may be available from IBM for a fee with respect to operating systems as to which IBM has discontinued warranty service; further admits that OS/390 and z/OS are used by thousands of customers worldwide; and denies the remaining allegations of Paragraph 30.

31.     IBM admits that, for any operating system to be able to run on any particular computer, including a mainframe computer, that operating system must adhere to the hardware instruction set of that computer, and that, to run on any particular operating system, a particular application must adhere to the interfaces presented by that operating system; and denies the remaining allegations of Paragraph 31.

32.     IBM admits that IBM operating systems developed by IBM to run on IBM mainframe computers are specifically designed by IBM to work with and exploit the capabilities of such computers and must adhere to the architectural specifications and interfaces of such computers; further admits that IBM is aware of estimates that $1 trillion worth of applications have been written in the COBOL programming language; avers that the COBOL programming language is a multi-platform language available on many different computer systems, including many non-mainframe computer systems, and that COBOL facilitates the movement of applications among such different systems; and denies the remaining allegations of Paragraph 32.

33.     IBM admits that application programs, data files, and other software designed to operate with only IBM operating systems -- by definition -- may not run, unmodified, with other operating systems; further admits that many IBM customers have employees specifically trained to operate IBM hardware and software; further admits that servers and other computers running Linux, Unix, and Windows are promoted by competitors, and are regarded by many users, as reasonable substitutes for servers running OS/390 and z/OS; denies that there is a "substantial and well-defined subset" of locked-in "mainframe" customers who are "locked-in to the IBM operating systems"; and denies the remaining allegations of Paragraph 33.

34.    IBM admits that it is aware of estimates that $1 trillion worth of applications have been written in the COBOL programming language; further admits that it is aware of analyst estimates indicating that there are 200 billion lines of COBOL in use; avers that the COBOL programming language is a multi-platform language available on many different computer systems, including many non-mainframe computer systems, and that COBOL facilitates the movement of applications among such different systems; refers to the IBM website page entitled "Center stage in SOA development:  System z" for a fair and accurate summary of IBM's statements in their appropriate context; and denies the remaining allegations of Paragraph 34.

35.    IBM admits that it currently markets and supports z/OS and that it has withdrawn marketing and support for OS/390 in the ordinary course of its business; avers that extended service support may be available from IBM for a fee with respect to operating systems as to which IBM has discontinued warranty service; and denies the remaining allegations of Paragraph 35.

36.    IBM admits that operating systems for any computer, including mainframe computers, are complex and take time to develop and that many customers want operating systems that have been thoroughly developed, tested, and proven; and denies the remaining allegations of Paragraph 36.

37.    IBM admits that Unisys markets a line of servers under the names ClearPath Plus Libra Series and ClearPath Plus Dorado Series, that Bull markets a line of servers under the name DPS 9000, and that IBM and a number of other manufacturers market servers and other computers that they call "mainframes" or that they refer to with phrases such as "mainframe-class"; further admits that IBM's zSeries servers compete with these Unisys and Bull servers and other computers from Unisys and Bull and a host of other servers and computers from IBM and

other manufacturers; refers to its public statements concerning Linux, Unix, and Windows for a fair and accurate summary of IBM's statements in their appropriate context; and denies the remaining allegations of Paragraph 37.

38.    IBM admits that the product market or markets in which IBM's zSeries servers and their predecessors, and the IBM operating systems developed by IBM for use on these servers, compete is worldwide; avers that PSI has failed to define an appropriate market; denies the allegations concerning PSI's business strategy for lack of knowledge or information sufficient to form a belief as to the truth thereof; and denies the remaining allegations of Paragraph 38.

39.    Denied.

40.    IBM admits that it entered into a Consent Decree in 1956; avers that the dissolution of the Consent Decree was approved by the U.S. District Court for the Southern District of New York on May 1, 1997 and that the Consent Decree was phased out by July 2, 2001; and denies the remaining allegations of Paragraph 40.

41.    Denied.

42.    Denied.

43.    Denied.

44.    Denied.

45.    IBM admits the allegations of the first two sentences of Paragraph 45; and denies the remaining allegations of Paragraph 45.

46.    Denied.

47.    IBM admits that Amdahl and Hitachi sold mainframe computers; further admits that Amdahl became a wholly-owned subsidiary of Fujitsu and the combined company thereafter announced in or about October 2000 that it had decided not to develop a 64-bit processor, but

would continue to deliver servers in inventory and upgrades and to service its Millennium

processors for customers using them; further admits that Hitachi announced in or about March

2000 that it would discontinue sales of its Trinium and Pilot servers to new customers and would

continue to offer maintenance and service to existing customers and system upgrades to existing

Trinium users; refers to public statements by Fujitsu and Hitachi, including statements on their

websites, for a fair and accurate summary of those companies' current activities; and denies the

remaining allegations of Paragraph 47.

48.    IBM admits that the U.S. Department of Justice joined IBM in a motion to

dissolve the 1956 Consent Decree; further admits that the dissolution of the Consent Decree was

approved by the U.S. District Court for the Southern District of New York on May 1, 1997 and

that the decree was phased out by July 2, 2001; refers to the docket of the proceeding in which

the Consent Decree was dissolved for a fair and accurate summary of the positions taken by the

U.S. Department of Justice in their appropriate context; and denies the remaining allegations of

Paragraph 48.

49.    IBM refers to the quoted submission by the U.S. Department of Justice and the

docket of the proceeding in which the Consent Decree was dissolved for a fair and accurate

summary of the submission in its appropriate context; and otherwise denies the allegations of

Paragraph 49.

50.    Denied.

51.    IBM admits that it sold OS/390 between 1996 and 2000 and thereafter; further

admits that OS/390 could run most applications that ran on predecessor operating systems for

IBM mainframe computers and that those applications could access certain data created or

maintained for use with such operating systems; and denies the remaining allegations of Paragraph 51.

52.    IBM admits that consumers can run OS/390 and certain application software on computers supplied by other computer developers such as Amdahl and Hitachi; further admits that Amdahl and Hitachi sold mainframe computers; further admits that Amdahl became a wholly-owned subsidiary of Fujitsu and the combined company thereafter announced in or about October 2000 that it had decided not to develop a 64-bit processor, but would continue to deliver servers in inventory and upgrades and to service its Millennium processors for customers using them; further admits that Hitachi announced in or about March 2000 that it would discontinue sales of its Trinium and Pilot servers to new customers and would continue to offer maintenance and service to existing customers and system upgrades to existing Trinium users; refers to public statements by Fujitsu and Hitachi, including statements on their websites, for a fair and accurate summary of those companies' current activities; and denies the remaining allegations of Paragraph 52.

53.    IBM avers that the availability date for z/OS was March 1, 2001; and otherwise admits the allegations of Paragraph 53.

54.    IBM refers to its December 2002 announcement for a fair and accurate summary of the announcement in its appropriate context; avers that extended service support may be available from IBM for a fee with respect to operating systems as to which IBM has discontinued warranty service; and denies the remaining allegations of Paragraph 54.

55.    IBM refers to its September 2004 announcement for a fair and accurate summary of the announcement in its appropriate context; avers that extended service support may be

available from IBM for a fee with respect to operating systems as to which IBM has discontinued warranty service; and denies the remaining allegations of Paragraph 55.

56.    IBM admits that public sources state that PSI was founded in 1999; further admits that the allegations of Paragraph 56 appear to be consistent with certain statements that appear on PSI's website and in PSI's public presentations; and otherwise denies the allegations of Paragraph 56 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

57.    IBM admits that the allegations of Paragraph 57 appear to be consistent with certain statements that appear on PSI's website and in PSI's public presentations; and otherwise denies the allegations of Paragraph 57 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

58.    IBM admits that the allegations of Paragraph 58 appear to be consistent with certain statements that appear on PSI's website in PSI's public presentations; denies PSI's purported distinction between PSI's system and other emulators; and denies the remaining allegations of Paragraph 58 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

59.    Denied.

60.    IBM admits that PSI first corresponded with IBM in or about late 2000; further admits that it has licensed certain IBM operating systems, including OS/390 and VSE, for use on systems marketed by Fundamental Software, Inc., which had a patent license with IBM that expired on October 31, 2006; further admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI in their appropriate context; and denies the remaining allegations of Paragraph 60.

61.     IBM admits that it had not agreed to license IBM patents to PSI or its operating systems for use on PSI systems by January 2003; further admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI in their appropriate context; and denies the remaining allegations of Paragraph 61.

62.     IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of PSI's communications to IBM in their appropriate context; and otherwise denies the allegations of Paragraph 62.

63.     IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI in their appropriate context; avers that IBM's March 14, 2003 and April 2, 2003 letters referred to IBM's licensing practices relating to OS/390 and not to z/OS, and to patents relating only to IBM's Enterprise Systems Architecture/390 and not to IBM's z/Architecture, and expressly referenced, among other things, IBM's right to change its then-current licensing practices; and denies the remaining allegations of Paragraph 63.

64.     Denied.

65.     IBM admits that IBM and PSI entered into a limited-term, six-month development license agreement for OS/390 on or about May 14, 2003; avers that this development license did not give PSI the right to use OS/390 for the uses alleged in the Counterclaims; further admits that OS/390 V2R10, the latest version of OS/390, was withdrawn from marketing on December 17, 2002, that IBM announced on August 5, 2003 that it would discontinue service for OS/390 V2R10 as of September 30, 2004, and that IBM discontinued warranty service for OS/390 V2R10 on September 30, 2004; avers that extended service support may be available from IBM for a fee with respect to operating systems as to which IBM has discontinued warranty service; further avers that PSI acknowledged on April 11, 2003 that the May 2003 development license

agreement "may be a temporary arrangement for the sake of expediency"; further avers that PSI

agreed that "the granting of this limited license does not in any way grant PSI a patent license or

give PSI any express or implied rights, licenses or immunities under any IBM patents or other

intellectual property"; further avers that IBM told PSI, in 2001, that IBM did not intend to

license its z/Architecture and told PSI, on May 5, 2003, that IBM does "not plan to license PSI in

the fields of zArchitecture and coupling"; and denies the remaining allegations of Paragraph 65.

66.    IBM admits that, after IBM formally rejected PSI's requests for licenses for z/OS

for use on PSI's systems and told PSI that IBM would not license z/OS to PSI for use on PSI's

systems, PSI bypassed the designated IBM personnel to whom PSI had been told to address all

communications and requests for licenses and communicated with IBM personnel who were not

knowledgeable about the history of communications between IBM and PSI; further admits that,

by so doing and by placing orders through IBM personnel other than the designated IBM

personnel to whom PSI had been told to address all communications and requests for licenses,

PSI obtained licenses for z/OS that, as PSI knew, IBM did not intend to grant; further admits that

IBM has declined to grant PSI additional licenses for z/OS and has advised PSI that it will

decline to license z/OS to others for use on PSI systems; and denies the remaining allegations of

Paragraph 66.

67.    IBM admits that the history of correspondence between IBM and PSI is a fair and

accurate summary of IBM's communications to PSI in their appropriate context; and otherwise

denies the allegations of Paragraph 67.

68.    IBM admits that the page formerly on its website at

www.ibm.com/ibm/licensing/patents/practices.shtml was taken down on or about February 21,

2006; avers that the statement formerly contained at that website page expressly stated that it

"highlights IBM's present patent licensing practices and is subject to change at any time"; refers to the statement formerly contained at that website page for a fair and accurate summary of the statement in its appropriate context; and denies the remaining allegations of Paragraph 68.

69.    IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI in their appropriate context; avers that, in 2001, IBM offered to license to PSI certain information concerning IBM's Enterprise Systems Architecture/390, which PSI declined to license, and told PSI that IBM would not license its z/Architecture to PSI; and otherwise denies the allegations of Paragraph 69.

70.    IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI and PSI's communications to IBM in their appropriate context; and otherwise denies the allegations of Paragraph 70.

71.    IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI in their appropriate context; and otherwise denies the allegations of Paragraph 71.

72.    IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI in their appropriate context; and otherwise denies the allegations of Paragraph 72.

73.    IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of PSI's communications to IBM in their appropriate context; and otherwise denies the allegations of Paragraph 73.

74.    IBM admits that representatives of PSI and IBM met in February 2006; and denies the remaining allegations of Paragraph 74.

75.     IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's communications to PSI in their appropriate context; and otherwise denies the allegations of Paragraph 75.

76.     IBM denies that its allegations of patent infringement are pretextual; and denies the remaining allegations of Paragraph 76 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

77.     IBM denies the allegations of Paragraph 77 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

78.     IBM avers that it does not "sell" its copyrighted operating systems and relevant software applications but rather licenses them pursuant to the terms of IBM Customer Agreements and/or other appropriate documents; and otherwise denies the allegations of Paragraph 78 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

79.     IBM denies the allegations of Paragraph 79 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

80.     Denied.

81.     Denied.

82.     IBM admits that it has stated that it will not license z/OS and OS/390 for use in conjunction with PSI's emulator systems; and denies the remaining allegations of Paragraph 82.

83.     IBM admits that IBM has published various versions of IBM's Principles of Operation; avers that the Principles of Operation contain information protected by patents and copyright; denies the allegations of Paragraph 83 concerning PSI's intentions and activities for

lack of knowledge or information sufficient to form a belief as to the truth thereof; and denies the remaining allegations of Paragraph 83.

84.    Denied.

85.    IBM admits that it did not literally refer to section 4.1 of PSI's IBM Customer Agreement in communications with PSI before initiating suit; refers to the history of correspondence between IBM and PSI, and to IBM's letter of August 3, 2006 in particular, for a fair and accurate summary of IBM's communications to PSI in their appropriate context; avers that IBM made clear in that letter that PSI had not properly obtained any license for z/OS for use in conjunction with PSI's emulator system; and denies the remaining allegations of Paragraph 85.

86.    Denied.

87.    IBM admits that it sells its servers and licenses its operating systems to sophisticated consumers; and denies the remaining allegations of Paragraph 87.

88.    Denied.

89.    IBM refers to the patents in suit for a fair and accurate summary of their claims and the context for the inventions described therein; and otherwise denies the allegations of Paragraph 89.

90.    IBM avers that the allegations of the second sentence of Paragraph 90 state a legal conclusion to which no response is required; to the extent a response is required, IBM denies those allegations; and otherwise denies the allegations of Paragraph 90.

91.    Denied.

92.    IBM denies the allegations of Paragraph 92 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

93.    IBM acknowledges that PSI has purported to reserve its rights to amend the allegations of its Counterclaims; and otherwise denies the allegations of Paragraph 93.

94.    Denied.

95.    Denied.

96.    Denied.

97.    IBM admits that mainframe computers and operating systems could be sold separately; refers to its historical statements concerning software licensing terms for a fair and accurate summary of IBM's statements in their appropriate context; avers that the "Specified Operating Environment" section of its August 8, 2006 Software Announcement on "IBM z/OS V1.8 -- Extending the enterprise-wide role" relates to IBM's warranty obligations under the IBM Customer Agreement; refers to the August 8, 2006 announcement for a fair and accurate summary of its contents in their appropriate context; and denies the remaining allegations of Paragraph 97.

98.    Denied.

99.    Denied.

100.    Denied.

101.    Denied.

102.    IBM admits that it entered into a settlement agreement with Microsoft Corporation ("Microsoft") and that Microsoft paid IBM approximately $775 million and extended $75 million in credit towards deployment of Microsoft software at IBM pursuant to the terms of that settlement agreement; and denies the remaining allegations of Paragraph 102.

## FIRST COUNTERCLAIM

103.    IBM incorporates by reference its responses to Paragraphs 1-102.

104.   Denied.

105.   Denied.

106.   Denied.

107.   Denied.

108.   Denied.

## SECOND COUNTERCLAIM

109.   IBM incorporates by reference its responses to Paragraphs 1-108.

110.   Denied.

111.   Denied.

112.   Denied.

113.   Denied.

114.   Denied.

## THIRD COUNTERCLAIM

115.   IBM incorporates by reference its responses to Paragraphs 1-114.

116.   Denied.

117.   Denied.

118.   Denied.

119.   Denied.

120.   Denied.

121.   Denied.

122.   Denied.

123.   Denied.

## FOURTH COUNTERCLAIM

124.    IBM incorporates by reference its responses to Paragraphs 1-123.

125.    Denied.

126.    Denied.

127.    Denied.

## FIFTH COUNTERCLAIM

128.    IBM incorporates by reference its responses to Paragraphs 1-127.

129.    Denied.

130.    Denied.

131.    Denied.

## SIXTH COUNTERCLAIM

132.    IBM incorporates by reference its responses to Paragraphs 1-131.

133.    Denied.

134.    Denied.

135.    Denied.

## SEVENTH COUNTERCLAIM

136.    IBM incorporates by reference its responses to Paragraphs 1-135.

137.    Denied.

138.    Denied.

139.    Denied.

## EIGHTH COUNTERCLAIM

140.    IBM incorporates by reference its responses to Paragraphs 1-139.

141.    IBM denies the allegations of Paragraph 141 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

142.    IBM denies the allegations of Paragraph 142 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

143.    Denied.

144.    Denied.

145.    Denied.

146.    Denied.

## NINTH COUNTERCLAIM

147.    IBM incorporates by reference its responses to Paragraphs 1-146.

148.    IBM avers that the page formerly on its website at www.ibm.com/ibm/licensing/patents/practices.shtml was taken down on or about February 21, 2006; further avers that the statement formerly contained at that website page expressly stated that it "highlights IBM's present patent licensing practices and is subject to change at any time"; refers to the statement formerly contained at that website page for a fair and accurate summary of the statement in its appropriate context; and otherwise denies the allegations of Paragraph 68.

149.    IBM admits that the history of correspondence between IBM and PSI is a fair and accurate summary of IBM's statements in their appropriate context; avers that, in 2001, IBM offered to license to PSI certain information concerning IBM's Enterprise Systems

Architecture/390, which PSI declined to license, and told PSI that IBM would not license its

z/Architecture to PSI; and otherwise denies the allegations of Paragraph 149.

150. IBM admits that the history of correspondence between IBM and PSI is a fair and

accurate summary of IBM's statement in its appropriate context; and otherwise denies the

allegations of Paragraph 150.

151. IBM admits that it communicated with PSI in 2004 on the subject of IBM patents;

and denies the remaining allegations of Paragraph 151.

152. Denied.

153. Denied.

154. Denied.

155. Denied.

156. Denied.

157. Denied.

158. Denied.

## TENTH COUNTERCLAIM

159. IBM incorporates by reference its responses to Paragraphs 1-158.

160. IBM avers that it is the owner of the patents in suit; and otherwise admits the

allegations of Paragraph 160.

161. IBM avers that PSI has infringed the cited patents; and otherwise admits the

allegations of Paragraph 161.

162. Admitted.

163. Denied.

164. Denied.

165.    Denied.

166.    Denied.

167.    Denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

172.    Denied.

173.    Denied.

174.    Denied.

175.    Denied.

176.    Denied.

177.    Denied.

178.    Denied.

179.    Denied.

## ELEVENTH COUNTERCLAIM

180.    IBM incorporates by reference its responses to Paragraphs 1-179.

181.    IBM avers that PSI never challenged the validity of any IBM patents before the initiation of this lawsuit; and otherwise admits the allegations of Paragraph 181.

182.    Denied.

183.    IBM denies each and every allegation of the Counterclaims that is not expressly admitted in this Reply.

184.    IBM denies that PSI is entitled to any of the relief sought in the Counterclaims.

## AFFIRMATIVE AND OTHER DEFENSES

Further replying to PSI's Counterclaims, IBM asserts the following defenses. IBM's investigation of PSI's claims and its defenses is ongoing, and IBM reserves the right to amend its reply with additional defenses as further information is obtained.

### First Defense:  Failure to State a Claim

1.     The Counterclaims fail to state a claim on which relief may be granted.

### Second Defense:  Litigation Privilege

2.     IBM's Complaint herein was and is not objectively baseless and as a matter of law IBM's filing of its Complaint is protected by applicable privileges.

### Third Defense:  Unclean Hands

3.     PSI's purported claims, individually and as a whole, are barred by the doctrine of unclean hands.

### Fourth Defense:  Lack of Standing (New York General Business Law § 350)

4.     There is no private right of action under New York General Business Law § 350 for a plaintiff who is not suing in its capacity as a consumer based on an alleged injury that affects the public as a whole.

### Fifth Defense:  Mootness (Declaratory Judgment Action)

5.     PSI's purported declaratory judgment action has been rendered moot by IBM's affirmative claims for patent infringement, as alleged in IBM's Complaint.

### Sixth Defense:  Laches, Estoppel, Waiver, and/or Acquiescence

6.      PSI's purported claims, or some of them, are barred by the doctrines of laches,
estoppel, waiver, and/or acquiescence.

### PRAYER FOR RELIEF

**WHEREFORE**, IBM prays for the following relief:

a.      That this Court grant IBM the relief sought in IBM's Complaint;

b.      That this Court enter a judgment that PSI take nothing by reason of PSI's
Counterclaims against IBM and dismiss the Counterclaims with prejudice; and

c.      That this Court award IBM such other and further relief as this Court may deem
just and proper.

Respectfully submitted,

DATED:     New York, New York
           March 8, 2007

                                QUINN EMANUEL URQUHART OLIVER &
                                   HEDGES, LLP


                                By: _____


                                Richard I. Werder, Jr. (RW-5601)
                                Edward J. DeFranco (ED-6524)
                                David L. Elsberg (DE-9215)
                                51 Madison Avenue
                                22nd Floor
                                New York, New York  10010-1601
                                (212) 849-7000

                                Frederick A. Lorig
                                865 S. Figueroa Street
                                Los Angeles, California  90017
                                (213) 443-3000

                                Attorneys for Plaintiff
                                International Business Machines Corporation