IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PLATFORM SOLUTIONS, INC. and T3 TECHNOLOGIES, INC.,<br><br>　　　　　Defendants. | Civil Action No. 06-cv-13565-LAK (THK)<br><br>**JURY TRIAL DEMANDED**<br><br>[PUBLIC VERSION – CONFIDENTIAL VERSION FILED UNDER SEAL ON 4/16/08]<br><br>[SUPPORTING DECLARATIONS FILED UNDER SEAL 4/16/08] |

**SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF PLATFORM SOLUTIONS, INC'S MOTION FOR SUMMARY JUDGMENT ON COUNTS ELEVEN AND TWELVE OF INTERNATIONAL BUSINESS MACHINE CORPORATION'S SECOND AMENDED COMPLAINT**

　　　　Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1, defendant and counterclaimant Platform Solutions, Inc. ("PSI") respectfully submits the following statement of materials facts that PSI contends are not in dispute.

　　　　1.　　Beginning in the 1970s, Amdahl Corporation ("Amdahl") developed the five diagnostic programs alleged to contain IBM trade secrets—DIRT, ALPHA, HOT, 8E7 and Bring-up Programs (BUPS)—to test the compatibility of its mainframes with IBM's operating systems. [SAC at ¶¶ 35-40; Declaration of Scott Blackledge at ¶ 3 ("Blackledge Decl."); Declaration of Ronald Hilton at ¶ 3 ("Hilton Decl.").]

　　　　2.　　The accused diagnostics were developed using, among other sources, written technical specifications that IBM disclosed to Amdahl pursuant to technical disclosure agreements known as Technical Information Disclosure Agreements (TIDA) and Technical Information License Agreements (TILA). [SAC at ¶¶ 35-40; Blackledge Decl. at ¶ 7.]

　　　　3.　　The TILA and TIDA required Amdahl to adopt a number of detailed security measures. [Declaration of Gregory Handschuh at ¶¶3-5, Exs. A & B ("Handschuh Decl.").]

4. For example, the 1986 TIDA required Amdahl to "store the Technical Information, when not in use, in a locked desk, file, or safe in a locked room," "provide, secure, locked work areas," restrict access to those work areas, "maintain a log, indicating date, time and duration of each access to the Technical Information," and "report to IBM all known an suspected losses, thefts, or unauthorized accesses." [Handschuh Decl. at ¶ 3, Ex. A.]

5. The agreements also provided IBM with the contractual right to inspect Amdahl's compliance with the agreements. [*Id.*, Ex. A ("Applicant agrees to permit IBM, upon reasonable request and during Applicant's working hours, to inspect Applicant's security procedures for compliance with the above requirements."); *Id.* at ¶ 4, Ex. B ("Licensee shall permit IBM, upon reasonable notice and during Licensee's normal working hours, to inspect Licensee's security measures for compliance with this Agreement.").]

6. In 1997, Fujitsu Limited acquired Amdahl. [Handschuh Decl. at ¶ 2.]

7. On February 11, 1999, Platform Solutions, Inc. ("PSI") was spun off from Amdahl to continue Amdahl's business of developing and marketing PCMs. [Hilton Decl. at ¶ 4.]

8. In exchange for a share of ownership, PSI received, *inter alia*, a license to the Amdahl diagnostics from Amdahl. [Hilton Decl. at ¶ 4.]

9. From 1999 to 2003, PSI was headquartered within Amdahl's facilities in Sunnyvale, California, had access to the Amdahl diagnostics, received physical copies of the diagnostics, and ran the diagnostics to test full compatibility. [Hilton Decl. at ¶ 7.] For example, in early 2000, Fujitsu's Bob Rethemeyer provided Hilton with a compact disc containing Amdahl BUPs that IBM contends constitute IBM trade secrets. PSI was running DIRT by no later than December 13, 2001, PSI was running HOT by no later than June 2002, and PSI was running Alpha by no later than February 2003. [Hilton Decl. at ¶ 7.]

10. These development activities occurred in California. [Hilton Decl. at ¶ 8.]

11. The Amdahl diagnostic programs were developed for the same purpose and relate to the same or similar architectural facilities. [SAC at ¶¶ 39-41 and Declaration of Ryan Kirkpatrick at ¶ 5, Ex. D ("Kirkpatrick Decl.") (IBM's Responses to PSI's Fourth Set of Interrogatories listing the accused diagnostic listings by architectural facility).]

12. In 2000, IBM and Amdahl were in discussions regarding, *inter alia*, IBM's desire to acquire the Amdahl diagnostic programs. [Blackledge Decl. at ¶4 .]

13. On January 23, 2001, Ronald Hilton, PSI's founder, sent an email to IBM's Edwin Dalley and Robert Chrisfield explaining PSI's development plans and disclosing that PSI obtained "rights to Amdahl's emulation technology, associated patents, and access to other intellectual property such as S/390 diagnostics and benchmarks." [Hilton Decl. at ¶¶ 9-10, Ex. A].

14. Chrisfield was, at the time, IBM's Manager of Business Alliances and OEM Sales, and in charge of technical information licensing. [Hilton Decl. at ¶ 9.]

15. On March 5, 2001, Hilton again wrote to Chrisfield regarding PSI's development plans, stating:

> In support of [PSI's product development plans] we have all the assets developed by Amdahl for S/390 development:
> - IA32-based Merlin S/390 simulator
> - Bring-up programs
> - System-level diagnostics such as HOT and DIRT
> - Performance benchmarks and workload suites.

[Hilton Decl. at ¶ 11, Ex. B.]

16. In the summer of 2001, Hilton and representatives of IBM discussed a three-way deal in which IBM would receive Amdahl's diagnostics and Merlin emulation code and PSI would receive a license to IBM's written technical specifications. [Hilton Decl. at ¶ 12.] Both Scott Blackledge, an IBM engineer, and Tom Morris, Jr., Blackledge's manager at IBM, had separate discussions with Hilton in which they indicated that IBM required that it receive the Amdahl diagnostics as part of any exchange of intellectual property. [Id.; Blackledge Decl. at ¶ 5.]

17. Blackledge was a former Amdahl employee familiar with the diagnostics. In 2001, IBM also employed numerous other former Amdahl engineers who had experience with Amdahl's diagnostics, including Janet Bridgewater, the chief architect of ALPHA. [Blackledge Decl. at ¶ 7.]

18. On May 10, 2002, IBM's Blackledge asked Hilton whether PSI still needed an "Alpha developer." [Hilton Decl. at ¶ 13, Ex. D.]

19. Hilton responded, "If you're refering [sic] to the diagnostic, we have not yet attempted to run it, but will probably rely on Amdahl to help us with that. They helped us to get Dirt and Hot running, both of which are working well at this point." [Id.]

20. During the relevant time (1999-present), IBM had its own system-level diagnostics and was aware that Amdahl's diagnostics, like IBM's diagnostics, were created from IBM technical specifications and that Amdahl's system-level diagnostics tested both public and non-public aspects of the IBM Principles of Operation. [Blackledge Decl. at ¶ 7.]

21. On February 7, 2003, IBM's Director of Licensing, Gerald Lane, wrote a letter asking Hilton what features PSI's product would support. [Hilton Decl. at ¶ 14, Ex. E.]

22. That same day, Mr. Hilton responded via email that: "To the best of our knowledge, our implementation does not deviate in any way from the IBM architectural specifications. We have successfully run Amdahl's system-level diagnostics such as HOT and DIRT to ascertain full compatibility." [Hilton Decl. at ¶ 15, Ex. F.]



24. In July 2004, PSI launched a website announcing that "[i]n 1999, PSI was founded by a core team of Amdahl design engineers who acquired the intellectual property and assets of the former Amdahl Corporation." [Declaration of Christian Reilly at ¶ 3 ("Reilly Decl.").]

25. In an April 26, 2005 letter, IBM suggested that PSI had "encroached on IBM's intellectual property rights, including patents and trade secrets." [Handschuh Decl. at ¶ 5; Ex. C.]

26. On April 29, 2005, PSI responded by denying misappropriation and requesting that IBM "provide PSI with the details or basis for such belief." [Id. at ¶ 6, Ex. D.]

27. IBM replied on May 23, 2005 by stating that "PSI's claim that its product is 'based on proven systems architecture spun-off from Amdahl' is troubling, as IBM had licensed a large number of confidential technical documents to Amdahl and Fujitsu, and that information was not transferable." [Id. at ¶ 7, Ex. E.]

28. PSI responded on May 26, 2005, again denying misappropriation and requesting that "if [IBM] ha[s] any reason to believe otherwise, please bring it to [our] attention." [Id. at ¶ 8, Ex. F.]



30. IBM contends that the Amdahl diagnostics, whether in executable or source code format, disclose IBM trade secrets and that Fujitsu and PSI misappropriated those trade secrets when Fujitsu disclosed and PSI acquired the Amdahl diagnostics. [SAC at ¶ 64.]

31. IBM does not contend that PSI received any of the actual written technical specifications disclosed by IBM to Amdahl. [*See generally* SAC and IBM's Responses to PSI's Fourth Set of Interrogatories, Kirkpatrick Decl. at ¶ 5, Ex. D.]

32. From January 2001 to 2007, IBM never asked PSI for a description of the diagnostics or other intellectual property that was transferred by Fujitsu or suggested that the diagnostics might constitute IBM trade secrets. [Hilton Decl. at ¶ 15.]



35. Based on the absence of any evidence produced to the contrary, PSI also contends the following facts are uncontroverted:

   a. From January 2001 to 2007, IBM never asked Amdahl for a description of the diagnostics or other intellectual property that was transferred to PSI.

   b. From January 2001 to the present, IBM never exercised its right to inspect Amdahl's compliance with the TIDA/TILA.

   c. To date, IBM has not instituted any action against Amdahl or its successors or assigns arising from its alleged misappropriation of IBM trade secrets.

Dated: April 23, 2008                    **SUSMAN GODFREY L.L.P.**

                                         By: ____/s/ Jacob Buchdahl_____
                                         Stephen D. Susman
                                         Jacob W. Buchdahl
                                         Tibor L. Nagy
                                         SUSMAN GODFREY L.L.P.
                                         654 Madison Ave., 5th Floor
                                         New York, NY 10022

(212) 336-8330

Stephen Morrissey (SM-2952) (*Pro Hac Vice*)
Ryan Kirkpatrick (RK-2281) (*Pro Hac Vice*)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90069
(310) 789-3100
*Attorneys for Platform Solutions Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the following documents have been caused to be served on all counsel of record on April 23, 2008 via email:

Notice of Motion for Partial Summary Judgment (Public Version)

Memorandum of Law in Support of Platform Solutions, Inc.'s Motion for Summary Judgment on Counts Eleven and Twelve of International Business Machine Corporation's Second Amended Complaint (Public Version)

Separate Statement of Undisputed Facts in Support of Platform Solutions, Inc.'s Motion for Summary Judgment on Counts Eleven and Twelve of International Business Machine Corporation's Second Amended Complaint (Public Version)

_____