**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>PLATFORM SOLUTIONS, INC. and T3 TECHNOLOGIES, INC.,<br><br>Defendants. | Civil Action No. 06-cv-13565-LAK<br><br>**JURY TRIAL DEMANDED** |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLATFORM SOLUTIONS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant and Counterclaimant Platform Solutions, Inc. ("PSI"), respectfully submits the recent decision of *Cypress Semiconductor Corp. v. Superior Court of Santa Clara County,* __ Cal. App. ___, No. CV-019992, slip op. (Cal. App. 6th, May 30, 2008) ("*Cypress*") (attached as Exhibit A and available at http://www.courtinfo.ca.gov/opinions/documents/H032114.DOC), as supplemental authority in support of PSI's Motion for Summary Judgment on Counts Eleven and Twelve of Plaintiff and Counterdefendant International Business Machines Incorporated's ("IBM") Second Amended Complaint.

*Cypress* bears directly on the critical question of when IBM had inquiry notice of PSI's alleged misappropriation of trade secrets. PSI contends that IBM had inquiry notice when it first suspected or had reason to suspect misappropriation. *See* PSI Opening Br. at 8-9 (collecting authorities). IBM has represented to the Court that:

> It is well settled that mere suspicion of wrongdoing will not commence the running of the statute of limitations.

IBM Opposition at 22.[1]

*Cypress* reaffirms that in the context of a claim brought under the California Uniform Trade Secrets Act:

> "[a] plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.] *Norgart* [*v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999),] explained that by discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, it was referring to the 'generic' elements of wrongdoing, causation, and harm. (*Norgart*, supra, 21 Cal. 4th at p. 397.) In so using the term 'elements,' we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."

Slip op. at 10 (quoting *Fox v. Ethicon End-Surgery, Inc.*, 35 Cal. 4th 707 (2005)) (emphasis supplied).

/ / /
/ / /
/ / /

1 In support of this purported statement of the law, IBM quotes language from *Intermedics, Inc. v. Ventritex, Inc.,* 822 F. Supp. 634 (N.D. Cal. 1993), stating that "suspicion and fear are not sufficient predicates to file a lawsuit" (which is, of course, irrelevant to the question of whether suspicion triggers a duty to investigate), and a section of *Garamendi v. SDI Vendome S.A.*, 276 F.Supp.2d 1030, 1043 (C.D. Cal. 2003), that is not discussing inquiry notice at all, but rather "the near-actual type of notice sufficient to end a period of equitable tolling." *See id.* at 1042-43 ("When intentional concealment tolls a statute of limitations, something closer to actual notice than mere inquiry notice is required to end the tolling period. . . . Although few courts have considered in detail the difference between 'inquiry notice' and the near-actual type of notice sufficient to end a period of equitable tolling, the D.C. Circuit Court of Appeals offered the following explanation in *Hobson*: 'By "notice," we refer to an awareness of sufficient facts to identify a particular cause of action, be it a tort, a constitutional violation or a claim of fraud. We do not mean the kind of notice –based on hints, suspicions, hunches or rumors – that requires a plaintiff to make inquiries in the exercise of due diligence, but not to file suit.'") (emphasis supplied) (quoted, in selective parts, by IBM). *Garamendi* in fact confirms that "hints, suspicions, hunches or rumors" trigger a duty to investigate under traditional inquiry notice principles.

Dated: June 5, 2008

SUSMAN GODFREY L.L.P.

By: _____/s/ Jacob W. Buchdahl____

Stephen D. Susman
Jacob W. Buchdahl
Tibor L. Nagy
SUSMAN GODFREY L.L.P.
654 Madison Ave., 5th Floor
New York, NY 10022
(212) 336-8330

Stephen Morrissey (Pro Hac Vice)
Ryan Kirkpatrick (Pro Hac Vice)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90069
(310) 789-3100
*Attorneys for Platform Solutions Inc.*

# EXHIBIT A

Filed 5/30/08

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CYPRESS SEMICONDUCTOR CORPORATION,<br><br>Petitioner,<br><br>v.<br><br>SUPERIOR COURT OF SANTA CLARA COUNTY,<br><br>Respondent;<br><br>SILVACO DATA SYSTEMS,<br><br>Real Party in Interest. | H032114<br>(Santa Clara County<br>Super. Ct. No. CV019992) |

## I. INTRODUCTION

This case arises under California's Uniform Trade Secrets Act (Civ. Code, § 3426 et seq. (CUTSA)).[1] The question presented is this: If someone steals a trade secret and then sells it to a third party, when does the statute of limitations begin to run on any misappropriation claim the trade secret owner might have against the third party? The trial court concluded that the limitations period did not begin to run until the third party had actual notice of the trade secret owner's claim to the information. For reasons we shall explain, we disagree with the trial court. We conclude that with respect to the element of knowledge, the statute of limitations on a cause of action for misappropriation begins to run when the *plaintiff* has any reason to suspect that the third party knows or

---

[1] Further unspecified statutory references are to the Civil Code.

reasonably should know that the information is a trade secret. The third party's actual state of mind does not affect the running of the statute.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The trade secret owner in this case is plaintiff Silvaco Data Systems (Silvaco). Silvaco develops and licenses electronic design automation (EDA) software. Customers for EDA software use it to design their own products. One of Silvaco's EDA products was software known as SmartSpice. Silvaco maintained the SmartSpice source code as a trade secret. The source code itself was not distributed with SmartSpice. Like other software programs, the source code, which humans can read, was compiled into a computer readable or executable form contained in the software. (See *Cadence Design Systems, Inc. v. Avant! Corp.* (2002) 29 Cal.4th 215, 218, fn. 3 (*Cadence*).)

Beginning in late 1998, a former Silvaco employee working for Circuit Systems, Inc. (CSI), incorporated the SmartSpice trade secrets into CSI's product DynaSpice. Silvaco suspected the misappropriation in 2000 and sued both the employee and CSI at that time. Silvaco did not directly notify or take any action against CSI customers who had licensed DynaSpice for use in designing their own products. There is evidence that Silvaco's claim against CSI was reported in EDA trade publications and various sites on the Internet.

On August 18, 2003, Silvaco and CSI entered into a settlement agreement and stipulated judgment. The judgment included the express finding that Silvaco's trade secrets had been incorporated into DynaSpice. The judgment required CSI to cease licensing DynaSpice, to inform customers who had already purchased DynaSpice licenses that the software contained Silvaco trade secrets, and to urge its customers to terminate their use of DynaSpice. Defendant, Cypress Semiconductor Corp. (Cypress), one of the CSI customers, learned of the judgment in late August 2003.

After judgment was entered against CSI, Silvaco directly notified CSI customers that the DynaSpice program contained misappropriated trade secrets. Silvaco first

contacted Cypress in September 2003 and demanded that Cypress cease its use of the trade secrets. Silvaco alleges that notwithstanding notice, Cypress continued to use DynaSpice and even went back to CSI to obtain new license keys. Silvaco sued Cypress in May 2004.

At the beginning of trial Silvaco asked the court to exclude evidence relating to Cypress's statute of limitations defense. Cypress had raised the defense on the ground that Silvaco should have commenced suit against the CSI customers when it first suspected that the customers had acquired its trade secrets. Silvaco's opposition turned upon the undisputed fact that Cypress had not known of CSI's misappropriation until August 2003 and the fact that Silvaco was seeking damages only for injuries arising after that point. Silvaco pointed out that the statute of limitations does not begin to run until all the elements of the cause of action are present and that one of the elements of misappropriation is the defendant's knowledge of the wrongfulness of its conduct. (§ 3426.1.) Since Cypress could not have been charged with knowledge of wrongfulness until August 2003, the statute could not have begun to run until then. The trial court agreed with Silvaco, concluding, as a matter of law, that the cause of action for misappropriation against Cypress "could not have 'accrued' " until August 2003 and that Silvaco had filed suit against Cypress well within the three-year period of limitations. (§ 3426.6.)

Cypress challenged the trial court's order by petition for writ of mandate. Concluding that the question warranted writ review, we granted Cypress's request for stay and issued an order to show cause.

## III. ISSUE AND STANDARD OF REVIEW

Simply put, the issue is, when does the statute of limitations begin to run on a cause of action for misappropriation under the CUTSA where the defendant is a third party who was uninvolved in the original misappropriation? The question is one of law to which we apply our independent review. (*California Teachers Assn. v. San Diego*

*Community College Dist.* (1981) 28 Cal.3d 692, 699; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801.)

To the extent our resolution of the question requires us to construe the CUTSA statute of limitations, we apply settled rules. Our fundamental task is to ascertain the intent of the lawmakers. (*In re Harris* (1993) 5 Cal.4th 813, 844.) If there is no ambiguity in the language of the statute, then the plain meaning of the language governs. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) If the statutory language permits more than one reasonable interpretation, we may consider various extrinsic aids, including examination of the evils to be remedied and the legislative scheme encompassing the statute in question. (*Ibid.*; *People v. Garrett* (2001) 92 Cal.App.4th 1417, 1422.) We select the interpretation that comports most closely with the apparent intent of the Legislature, with a view toward promoting, rather than defeating, the general purpose of the statute and avoiding an interpretation that would lead to absurd consequences. (*People v. Walker* (2002) 29 Cal.4th 577, 581; *People v. Connor* (2004) 115 Cal.App.4th 669, 678.)

## IV. DISCUSSION

### *A. The Single-Claim Rule Does Not Apply*

The CUTSA statute of limitations is contained in section 3426.6, which provides: "An action for misappropriation must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this section, a continuing misappropriation constitutes a single claim." Relying upon the second sentence of this section, Cypress and amicus curiae argue that the statute begins to run on all third-party actions when the plaintiff learns of the original misappropriation. In this case that would mean that the limitations period began when Silvaco discovered CSI's misappropriation in or about November 2000. Under this theory, CSI's misappropriation set up one continuing wrong that began the running of the statute against all of Silvaco's misappropriation claims. If this

interpretation of section 3426.6 is correct, then Cypress, not Silvaco, would be entitled to judgment as a matter of law since it is undisputed that Silvaco filed its suit against Cypress well over three years after it sued CSI. Although there is some authority for this position, we are not persuaded.

The single-claim argument has its roots in the common law approach to protecting trade secrets. Historically, liability for improper use of trade secrets was based in some jurisdictions, California among them, upon the view that the interest protected by trade secret law is the contractual or confidential relationship within which the trade secrets were disclosed. Breach of that confidence was a single wrong. As one court explained, "The fabric of the relationship once rent is not torn anew with each added use or disclosure, although the damage suffered may thereby be aggravated. The cause of action arises but once . . . ." (*Monolith Portland Midwest Co. v. Kaiser Aluminum & C. Corp.* (9th Cir. 1969) 407 F.2d 288, 293.) Other jurisdictions viewed the interest to be protected as property. Under the property view, each unauthorized use of the property gave rise to a new cause of action with its own statute of limitations. (*Underwater Storage, Inc. v. United States Rubber Co.* (D.C. Cir. 1966) 371 F.2d 950.) Thus, under the property view, whether there was one defendant or many, every unauthorized use was a separate claim. The CUTSA adopted the single-claim approach when it specified in section 3426.6 that "a continuing misappropriation constitutes a single claim." The effect of this provision is that the first discovered (or discoverable) misappropriation of a trade secret commences the limitations period. (*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1026 (*Glue-Fold*).) Cypress maintains, therefore, that under section 3426.6 plaintiff's discovery of CSI's original misappropriation triggered the running of the statute.

This approach to the problem has an appealing simplicity but it ignores the added complexity of the case, which is that Cypress is not the original misappropriator, never had any direct relationship with Silvaco, and allegedly committed a different type of

misappropriation. Cypress cites *Forcier v. Microsoft Corp.* (N.D.Cal. 2000) 123 F.Supp.2d 520 (*Forcier*), in support of the argument that there is but one limitations period even when there are multiple defendants. In our view, this construction of the law could lead to unjust results.

In *Forcier*, the plaintiff had become convinced in 1993 that Greg Stikeleather had misappropriated his trade secrets. The plaintiff did not take action immediately because he thought that Stikeleather's company, Aha!, had gone out of business. Later the plaintiff learned that Aha! had begun marketing a product containing his trade secrets. In 1996, Aha! sold the technology containing the trade secrets to Microsoft. The plaintiff sued Aha! and Microsoft in 1999. (*Forcier*, *supra*, 123 F.Supp.2d at pp. 523-524.) The district court granted the defendants' motions for summary judgment on the ground that the claims were barred by the CUTSA statute of limitations. (*Id.* at p. 525.) The court noted that the law imposed upon plaintiffs the responsibility " 'to take prompt and assertive corrective action with respect to all of [their] interests whenever [they] detect a fracture in a once confidential relationship.' " (*Ibid.*) *Forcier* concluded from this that the statute began to run in 1993 as to both Aha! and Microsoft. (*Id.* at p. 527.) *Forcier* granted Microsoft's motion on the alternative ground that, by the time Microsoft obtained the information, it was no longer secret. (*Ibid.*)

To the extent *Forcier* holds that the statute of limitations on the third party's misappropriation begins with the initial misappropriation, we reject it. Microsoft, the third party, did not acquire the trade secrets until nearly three years after the plaintiff discovered the original misappropriation. Under *Forcier*'s reasoning, the plaintiff could have lost its cause of action against Microsoft before Microsoft ever came in contact with the trade secrets. If we were to apply this approach in every three-party situation, the CUTSA would be subject to serious abuse. Malevolent third parties would merely have to lie low and wait out the clock. The plaintiffs, through no fault of their own, would

forever lose their trade secrets with recourse only against the original misappropriator. (*USM Corp. v. Tremco Inc.* (N.D.Ohio 1988) 710 F.Supp. 1140, 1142-1143, fn. 2.)

In our view, a plaintiff may have more than one *claim* for misappropriation, each with its own statute of limitations, when more than one defendant is involved. This is different from saying that each *misappropriation* gives rise to a separate claim, which is what section 3426.6 precludes. Our Supreme Court distinguished between a claim for misappropriation and the individual act or acts of misappropriation when it held that "a *claim* for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation, subject to the discovery rule provided in section 3426.6. Each new misuse or wrongful disclosure is viewed as augmenting a single claim of continuing misappropriation rather than as giving rise to a separate claim." (*Cadence*, *supra*, 29 Cal.4th 215, 223.) As this articulation of the law plainly implies, a single plaintiff could have separate claims against separate defendants. Indeed, the Supreme Court noted that one situation where a continuing misappropriation could give rise to multiple claims is where more than one defendant is involved. (*Id.* at p. 224.)

Our conclusion is confirmed by reference to the CUTSA, which, although it adopted the single-claim approach for purposes of the statute of limitations, did not wholly reject the property view of trade secret law. The CUTSA defines misappropriation of trade secrets to include the acquisition, disclosure, or use of trade secrets by a person who knows or has reason to know that the secret had been acquired by improper means or even by accident or mistake. (§ 3426.1, subd. (b)(1), (b)(2)(B),(C).)[2] By its plain terms, therefore, the CUTSA incorporates a property

[2] Section 3426.1, subdivision (b) reads in full:

" 'Misappropriation' means:

"(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(continued)

approach in that it makes third parties liable even if they had no prior relationship to the owner of the trade secrets. (Cf. *Cadence*, *supra*, 29 Cal.4th at p. 225.) If we were to apply the interpretation of section 3426.6 that Cypress urges, these third parties would never be liable if the plaintiff's claims against them were not discoverable within three years of the first misappropriator's breach of confidence. It makes much more sense to construe section 3426.6 as meaning that a cause of action for misappropriation against a third-party defendant accrues with the plaintiff's discovery of that defendant's misappropriation. Any continuing misappropriation by that defendant constitutes a single claim.

In this case, Cypress's acquisition and use of the trade secrets was a consequence of CSI's misappropriation and, to that extent, it was a continuation of the injury caused by CSI's initial misappropriation. But Silvaco does not allege that Cypress was involved in CSI's misappropriation and Silvaco seeks damages arising only from Cypress's use of the software after it learned of the original misappropriation. Under these circumstances, if Silvaco has a claim for misappropriation against Cypress, it is a separate claim with its own limitations period. Any other interpretation of the law would lead to the absurd consequence of allowing a third-party defendant like Cypress to engage in its own

---

"(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

"(A) Used improper means to acquire knowledge of the trade secret; or

"(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

"(i) Derived from or through a person who had utilized improper means to acquire it;

"(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

"(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

"(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

misappropriation without risk of suit so long as it waited for the three years to run on the original misdeed.

*B. The Statute is Triggered when the Plaintiff Knows or Has Reason to Know the Third Party Has Knowingly Acquired, Used, or Disclosed Its Trade Secrets*

Silvaco maintains, as it did in the trial court, that the limitations period commenced when Cypress learned that it possessed Silvaco's trade secrets. Cypress argues that the period began to run when Silvaco reasonably should have suspected that CSI customers had acquired its trade secrets. Cypress is partially correct.

The general rule is that a statute of limitations begins to run when the cause of action accrues. (Code Civ. Proc., § 312.) A cause of action accrues " 'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises.' " (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 (*Norgart*).) In the present case, the wrongful act is the misappropriation of trade secrets. Misappropriation of trade secrets is an intentional tort. (§ 3426.1.) A person is liable for misappropriation of trade secret information only if the person knows or has reason to know that he or she is not in rightful possession of the information. (*Ajaxo Inc. v. E*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 66.) Silvaco reasons from this that its cause of action against Cypress did not accrue, and the statute did not begin to run, until Cypress had notice of the tainted nature of the information contained in the DynaSpice software it was using. Under the agreed facts this was in August 2003.

Although Silvaco's analysis seems logical enough, the premise is flawed. It is not the law that accrual of a cause of action depends upon the existence, as a matter of fact, of a winning claim. Accrual does not wait "until a plaintiff is in a position to present evidence which will (regardless of what evidence the defense musters) establish facts which make liability a legal certainty." (*Intermedics v. Ventritex, Inc.* (N.D.Cal. 1993) 822 F.Supp. 634, 641.) Courts have rejected the notion that the "statute of limitations begins running only when a plaintiff can unassailably establish a legal claim for trade

secret misappropriation, [as that] would effectively eviscerate the statute of limitations in all cases in which the plaintiff never discovers 'smoking gun' evidence of misappropriation." (*Chasteen v. UNISIA JECS Corp.* (10th Cir. 2000) 216 F.3d 1212, 1218.)

Our Supreme Court discussed the interplay between accrual and the discovery rule, which delays accrual until the plaintiff discovers or has reason to discover the cause of action, in *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807. As *Fox* explained: "A plaintiff has reason to discover a cause of action when he or she 'has reason at least to suspect a factual basis for its elements.' [Citations.] Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. [Citations.] *Norgart* explained that by discussing the discovery rule in terms of a plaintiff's suspicion of 'elements' of a cause of action, it was referring to the 'generic' elements of wrongdoing, causation, and harm. (*Norgart*, *supra*, 21 Cal.4th at p. 397.) In so using the term 'elements,' we do not take a hypertechnical approach to the application of the discovery rule. Rather than examining whether the plaintiffs suspect facts supporting each specific legal element of a particular cause of action, we look to whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them."

Cypress insists that Silvaco's analysis, which the trial court adopted, improperly adds a "mutual discovery" requirement to section 3426.6. According to Cypress, only the plaintiff's discovery is pertinent to the statute of limitations analysis. It is true that the "discovery" to which section 3426.6 refers is the *plaintiff*'s discovery. Indeed, the comments to the Uniform Trade Secrets Act (Uniform Act) note that the act "delays the commencement of the limitation period until an *aggrieved person discovers* or

reasonably should have discovered the existence of misappropriation." (14 West's U. Laws Ann. (2005) U. Trade Secrets Act, com. foll. § 6 p. 650, italics added.)[3] But the defendant's state of mind is not irrelevant. Since a cause of action for misappropriation incorporates an element of knowledge on the part of the defendant, the trial court was correct in deciding that Cypress's knowledge was one of the elements necessary to the cause of action. Where the trial court went astray was in its focus upon Cypress's actual innocent mental state prior to August 2003. That focus was, in effect, an assessment of the merits of Silvaco's claim against Cypress, not a determination of when Silvaco should have suspected that it had been injured by a type of wrongdoing.

The proper focus, for purposes of the running of the statute of limitations, is not upon the defendant's actual state of mind but upon the plaintiff's suspicions. Indeed, a defendant's bad faith is often something a plaintiff cannot prove directly. In many cases a plaintiff must allege the defendant's tortious state of mind on information and belief. Certainly that plaintiff should not be expected to wait until he or she has direct proof of the defendant's mental state before filing the lawsuit. The plaintiff's subsequent inability to prove the requisite mental state means that the plaintiff cannot prevail on the merits of the claim but it does not retroactively affect the running of the statute of limitations.

Furthermore, as Cypress also maintains, it is not necessary that the plaintiff be able to identify the person or persons causing the harm. Since the identity of the defendant is not an element of a cause of action, the failure to discover the identity of the defendant does not postpone accrual of the cause of action. (*Norgart*, *supra*, 21 Cal.4th

---

[3] The CUTSA is derived from the Uniform Act, which was approved by the National Conference of Commissioners on Uniform State Laws in 1979 and adopted by California without significant change in 1984. (14 West's U. Laws Ann., *supra*, U. Trade Secrets Act, com. to p. 530 (Stats. 1984, ch. 1724, § 1, pp. 6252-6253).) Since the pertinent sections of the CUTSA were derived almost verbatim from the Uniform Act, it is appropriate to accord substantial weight to the Commissioners' comment on the construction of those sections. (*Glue-Fold*, *supra*, 82 Cal.App.4th at pp. 1023-1024.)

at p. 399.) " 'Although never fully articulated, the rationale for distinguishing between ignorance' of the defendant and 'ignorance' of the cause of action itself 'appears to be premised on the commonsense assumption that once the plaintiff is aware of' the latter, he 'normally' has 'sufficient opportunity,' within the 'applicable limitations period,' 'to discover the identity' of the former." (*Ibid.*, quoting *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932.) In this case, therefore, the statute began to run when Silvaco had any reason to suspect that the CSI customers knew or should have known that they had acquired Silvaco's trade secrets.

Cypress maintains that, unless the statute was triggered simply by Silvaco's knowledge that the customers had the secrets, Silvaco would unilaterally control accrual of its cause of action against the CSI customers. According to Cypress, if Silvaco knew that the CSI customers had its trade secrets, then Silvaco had a duty to put them on notice of its claim within the period of limitations. Although the CUTSA is designed to encourage such notice, we do not find any such duty within section 3426.6.

Section 3426.6 states that "An action for misappropriation must be brought within three years after *the misappropriation*." (Italics added.) As we have explained above, the misappropriation that triggers the running of the statute is that which the plaintiff suspects, not that which may or may not actually exist. Cypress's argument presumes a hypothetical situation where the plaintiff knows that a third party has its secrets and also knows that the third party has no reason to know of the plaintiff's claim to the information. In that situation, not only has there been no actual misappropriation, the plaintiff would have no reason to suspect one. The plain language of section 3426.6 imposes no duty upon the plaintiff in such a situation to notify the third party of its claim. To construe the statute as Cypress insists would require us to rewrite it. We have no power to rewrite statutes. "To rewrite the statute is a legislative, rather than judicial, prerogative." (*Hofer v. Young* (1995) 38 Cal.App.4th 52, 57.)

That is not to say that the CUTSA provides no incentive for a trade secret owner to put good-faith third parties on notice. If the trade secret owner actually knows that the third party is unaware of its claim, the substantive provisions of the CUTSA are designed to encourage prompt notice. A trade secret loses its protected status if the owner does not undertake reasonable efforts to keep it secret. (§ 3426.1, subd. (d).)[4] And good faith acquirers who do not receive notice before materially relying upon the trade secrets may not be liable for misappropriation at all. (*Id.*, subd. (b)(2)(C).) Thus, the failure of the trade secret owner to take prompt action to protect its trade secrets or to alert good-faith acquirers to the existence of its trade secret claims can serve as a defense in the event the trade secret owner eventually decides to pursue a misappropriation claim against the third party. These defenses, however, are separate from the statute of limitations defense.

## V. CONCLUSION

We conclude that the trial court erred in ruling, under the stipulated facts, that the statute of limitations did not begin to run until August 2003, when Cypress actually learned that the DynaSpice program contained Silvaco's trade secrets. Rather, the question is: When did Silvaco first have any reason to suspect that a CSI customer had obtained or used DynaSpice knowing, *or with reason to know*, that the software contained Silvaco's trade secrets? Based upon the record before us, this is not a question that can be answered as a matter of law. Accordingly, Cypress is entitled to a jury determination of its statute of limitations defense.

---

[4] Silvaco seemed to believe that, since the trade secrets were distributed to the CSI customers only in executable form, Silvaco did not need to act immediately to protect their secrecy. Whether Silvaco should have acted more promptly in order to protect its claim from defenses other than the statute of limitations is not an issue before us in this case.

## VI. DISPOSITION

Let a peremptory writ of mandate issue directing respondent court to vacate its order granting plaintiff's motion in limine to exclude evidence pertaining to defendant's statute of limitations defense and to enter a new order denying the motion. The temporary stay order issued on October 10, 2007, shall remain in effect until this opinion is final. Costs in this original proceeding are awarded to petitioner.

______________________________
Premo, Acting P.J.

WE CONCUR:

______________________________
Elia, J.

______________________________
Duffy, J.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 1-04-CV019992 |
|---|---|
| Trial Judge: | Hon. Marc B. Poché |
| Attorneys for Plaintiff and Real Party in Interest:<br>Silvaco Data Systems | Dechert<br>Chris Scott Graham<br>Jill F. Kopeikin |
| Attorneys for Petitioner:<br>Cypress Semiconductor Corp. | Morrison & Foerster<br>James H. Pooley<br>William L. Stern<br>Arturo J. González<br><br>Victoria Tidwell<br>Daniel E. Waldman |
| Amicus Curiae in Support of Petitioner | Orrick, Herrington & Sutcliffe<br>Chris R. Ottenweller<br>Michael C. Spillner<br>Robert S. Shwarts<br><br>Janet Craycroft<br>Tanya Hunter |

## CERTIFICATE OF SERVICE

I, Jacob W. Buchdahl, hereby certify that on June 5, 2008 I caused to be served the following documents via email to all counsel of record as indicated below.

**Notice of Supplemental Authority in Support of Platform Solution's, Inc.'s Motion for Partial Summary Judgment**

Adam Wolfson
adamwolfson@quinnemanuel.com
Brent B. Barriere
barrierb@phelps.com

Alexander Rudis
alexanderrudis@quinnemanuel.com.
Bruce Gerstein
bgerstein@garwingerstein.com

Brad Cohen
bradcohen@quinnemanuel.com
D. Skylar Rosenbloom
skylark.rosenbloom@phelps.com

David Elsberg
davidelsberg@quinnemanuel.com

David Patron
patrond@phelps.com

Edward J. Defranco
eddefranco@quinnemanuel.com

Frederick A. Lorig
fredericklorig@quinnemanuel.com

Harry M . Barton
harry.barton@phelps.com

Jonathan Scharf
jonathanscharf@quinnemanuel.com

Katherine Weall
katherineweall@quinnemanuel.com

Morris Waisbrot
mwaisbrot@hhlaw.com

Noah Silverman
nsilverman@garwingerstein.com

Patricia Bostic
patriciabostic@quinnemanuel.com

Peter Tsapatsaris
petertsapatsaris@quinnemanuel.com

Philippe Selendy
philippeselendy@quinnemanuel.com

Renee Bea
reneebea@quinnemanuel.com

Richard Erwine
richarderwine@quinnemanuel.com

Richard I. Werder, Jr.
rickwerder@quinnemanuel.com

Shahreen Mehjabeen
shahreenmehjabeen@quinnemanuel.com

Thomas Pease
thomaspease@quinnemanuel.com

Todd Anten
toddanten@quinnemanuel.com

____/s/ Jacob W. Buchdahl____________________