## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

Plaintiff,

v.

PLATFORM SOLUTIONS, INC. and T3
TECHNOLOGIES, INC.,

Defendants.

Civil Action No. 06-cv-13565-LAK (THK)

**JURY TRIAL DEMANDED**

**[PUBLIC VERSION - REDACTED]**

## PLATFORM SOLUTION INC.'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................... 1

II.  ARGUMENT ....................................................................................................... 4

    A.   Documents Recently Produced by FSI Confirm that IBM Willfully Abandoned any Rights it Had Concerning the Amdahl Diagnostic Programs Licensed to PSI in 1999 and Failed to Exercise any Efforts to Maintain the Secrecy of Whatever Purported Trade Secrets are Disclosed by those Diagnostics. .......................................................................................... 5

    B.   The FSI Production Confirms that IBM's Purported Belief that the Amdahl Diagnostics Licensed to PSI were Incomplete is Baseless and Unreasonable ........................................................................................... 11

    C.   The Recently Produced Evidence Provided IBM with Ample *Additional* Reasons to Suspect PSI of Having Acquired Complete Diagnostics Because, According to IBM, Amdahl was a Known Misappropriator ................. 14

III. CONCLUSION ................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

*Alamar Biosciences Inc. v. Difco Laboratories Inc.*,
    1996 WL. 648286, 40 U.S.P.Q. 2d 1437 (E.D.Cal., Feb. 27, 1996)................................2-3, 15

*Forcier v. Microsoft Corp.*,
    123 F. Supp. 2d 520 (N.D.Cal. 2000) .............................................................................14, 15

*Cypress Semiconductor Corp. v. Superior Court of Santa Clara County*,
    __ Cal. App. ___, No. CV-019992 (Cal. App. 6th, May 30, 2008).....................................3, 13

*Glue-Fold, Inc. v. Slautterback Corp.*,
    82 Cal. App. 4th 1018, 98 Cal. Rptr. 2d 661 (2000)............................................................8, 14

*Intermedics, Inc. v. Ventritex, Inc.*,
    822 F. Supp. 634 (N.D.Cal. 1993) .................................................................................8-9, 14

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
    2008 WL. 166950 (N.D.Cal. 2008)....................................................................................8

## STATUTES

Cal. Civ. Code § 3426.1 (West 1997)......................................................................................2, 15

## I.    **INTRODUCTION**

Platform Solutions, Inc. ("PSI") files this memorandum to bring to the Court's attention newly discovered evidence that conclusively proves that International Business Machines Corporation ("IBM") knew as early as 2001 that unauthorized parties were using its so-called "TIDA" trade secrets and yet did nothing about it.    The new evidence consists of emails produced by Fundamental Software, Inc. ("FSI") on May 22, 2008 in response to a subpoena served by PSI on February 20, 2008.

PSI's initial memorandum described in detail IBM's inaction in the face of (a) repeated statements by PSI that it had acquired and was using Amdahl diagnostics and (b) IBM's self-acknowledged suspicions that PSI was misappropriating IBM trade secrets.    In its opposition to PSI's motion for summary judgment as to Counts Eleven and Twelve of IBM's Second Amended Complaint, IBM asserts that:

> IBM takes extraordinary measures to maintain the confidentiality of the architectural facilities it maintains as trade secrets.

[IBM Opp. at 34.]    In support of this statement, IBM relies extensively on the provisions of its TIDA agreements with Amdahl concerning the handling of IBM technical specifications.    [*Id.*]

The recently produced evidence confirms IBM's assertion to be unequivocally false, and proves IBM's purported reliance on confidentiality agreements with third parties to be both hollow and grossly unreasonable.    ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



The California Uniform Trade Secrets Act ("CUTSA") mandates that a trade secret owner undertake "efforts that are reasonable under the circumstances to maintain its secrecy." Cal. Civ. Code § 3426.1 (West 1997).[1]  Failing to investigate or bring suit when a plaintiff is

---

[1]    This mandate is independent of the requirement that the trade secrets derive value from being not publicly known. *See id.*  PSI has always maintained that all of the architectural facilities that IBM asserts are its trade secrets

*(continued...)*

suspicious or aware of misappropriation constitutes a failure to maintain secrecy. *See Alamar Biosciences Inc. v. Difco Laboratories Inc.*, 1996 WL 648286, 40 U.S.P.Q.2d 1437, 1442 (E.D.Cal., Feb. 27, 1996) (failure to investigate or bring suit despite "concerns" and "suspicions" constituted inadequate efforts to maintain secrecy and destroyed trade secret status); *Cypress Semiconductor Corp. v. Superior Court of Santa Clara County*, __ Cal. App. ___, No. CV-019992, slip op. at 13 (Cal. App. 6th, May 30, 2008) (attached to PSI's Notice of Supplemental Authority) (noting that trade secret protection is lost where plaintiff fails to put all potential defendants on notice of misappropriation).

Here, IBM plainly failed to undertake reasonable efforts to maintain secrecy. First, as detailed in PSI's initial brief, IBM was told by PSI that it acquired the Amdahl diagnostics in 2001, and was told that PSI had "successfully run Amdahl's system-level diagnostics such as HOT and DIRT to ascertain full compatibility." [Hilton Decl. at ¶ 11, Ex. B.] Four years later (*i.e.*, in 2005), IBM accused PSI of misappropriation, but even then it is uncontroverted that IBM failed to either respond to PSI's requests for an identification of the bases of that assertion *or* to exercise its contractual right to inspect Amdahl's compliance with IBM technical agreements. Further, IBM has to this day failed to take any action against Amdahl (or its successor, Fujitsu) based on its disclosure of diagnostics to PSI in 1999.

The newly discovered evidence now shows that IBM was told in 2001 

---

are publicly known, and has explicitly cited to the fact that Hercules, whose source code is public, supports and discloses those features. [*See generally* PSI's Answer to IBM's Second Amended Complaint.] Indeed, IBM has even filed European patent applications disclosing the exact same information that it claims is confidential in this action. However, the public nature of IBM's purported trade secrets is the basis of a separate forthcoming motion, and is not the subject of the present motion.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████

In light of this evidence, there are only two reasonable conclusions: either (a) IBM did not consider the Amdahl diagnostic programs to disclose IBM trade secrets, or (b) IBM purposely disregarded what it knew to be misappropriations.  Either way, IBM's claim against PSI fails.  No reasonable juror could find this pattern of willful inaction to constitute reasonable efforts to maintain the secrecy of these diagnostic programs. Independent of IBM's inaction towards PSI, ████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████ Accordingly, summary judgment must be granted in PSI's favor.

## II.    ARGUMENT

**A.** **Documents Recently Produced by FSI Confirm that IBM Willfully Abandoned Any Rights it had Concerning the Amdahl Diagnostic Programs Licensed to PSI in 1999 and Failed to Make Any Efforts to Maintain the Secrecy of Whatever Purported Trade Secrets are Disclosed by Those Diagnostics**









7    Although this document was produced to PSI months ago, PSI was unable to determine the basis for this statement until FSI began producing the communications that IBM had failed to produce.



███████████████████████████████████████████████████████

████████████████████████████████ But, according to IBM's version of the facts and the law, as far back as 2001 IBM knew that Amdahl was in flagrant breach of its agreements with IBM and misappropriating its trade secrets. IBM could not reasonably rely on a confidentiality agreement that IBM knew was being breached. As a matter of law, a confidentiality agreement, once broken, is no greater security than having no agreement at all, and it cannot reasonably be relied upon to protect trade secrets. *See Silicon Image, Inc. v. Analogix Semiconductor, Inc.*, 2008 WL 166950 (N.D.Cal. 2008) (evidence that plaintiff and the customers and distributors to whom its disclosed its confidential information disregarded and breached confidentiality agreements "gives rise to serious questions on the merits" of trade secret claim) (denying motion for preliminary injunction); *cf. Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App.4th 1018, 98 Cal. Rptr. 2d 661, 666 (2000) ("California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that defendant can be trusted to protect other secrets.") (citations omitted); *Intermedics, Inc. v. Ventritex, Inc.*, 822 F. Supp. 634, 657 (N.D.Cal. 1993) ("[O]nce plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be trusted, plaintiff should know that there is a risk that that defendant will commit additional acts of misappropriation.").

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████

In sum, IBM had clear notice that an unauthorized party was using Amdahl diagnostics (and, apparently, other information) to develop an emulation program whose source code was made available to the entire world. IBM was even told ████████████████████████████████ ████████████████████████████████████████████ Whether through apathy, negligence, or the simple fact that it long ago relinquished the idea that any of its architectures (which are all based on a platform first released in 1964) are actually secret, ████

██████████████████████████████████████████████████████████
████████████████████████████ In short, the uncontroverted evidence of record demonstrates that IBM did not use reasonable efforts to maintain secrecy. Its trade secret claims therefore fail as a matter of law.

**B.    The FSI Production Confirms that IBM's Purported Belief that the Amdahl Diagnostics Licensed to PSI were Incomplete is Baseless and Unreasonable**

Faced with unequivocal statements by PSI that it had acquired Amdahl diagnostics and used them to test complete compatibility, IBM's opposition memorandum argues that IBM did not know *exactly* what diagnostics programs PSI received and that IBM reasonably relied on a purported belief that PSI only received what, in IBM's view, it was entitled to receive from Amdahl. [IBM Opp. at 21-30.] As explained in PSI's initial memorandum and reply, there was no basis for this assumption, and, indeed, IBM has failed to offer a single declaration substantiating this purported belief. [10]  In any event, █████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[10]    IBM has failed to offer a declaration from Gerald Lane, Robert Chrisfield, Robert Colao, Ron Lauderdale, or any of the *five* IBM attorneys to which PSI's February 2003 email was forwarded. The closest IBM comes is the declaration of Thomas Morris, who states, in conclusory fashion █████████████████████████████████ [Morris Decl. at ¶ 7.] Morris provides no explanation for this statement (the language of which comes straight out of IBM's complaint):
█████████████████████████████████████████████████████████

[11]    *See supra*, n. 2.



---

[12] *See supra,* n. 8.



In assessing whether IBM's claims are barred by the statute of limitations, the relevant question is "whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." *Cypress Semiconductor Corp.,* __ Cal. App. ___, No. CV-019992, slip op. at 10 (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 807 (2005)). ███████████████

███████████████████████████████████████████████████████████████

███████ IBM is could not possibly rely on a confidentiality agreement that *it knew was being breached.* Indeed, IBM's suggestion that ████████████████████████████████

████████████████████, IBM could reasonably assume, based on the "context" of PSI's entire email and the provisions of the Amdahl TIDA agreement, that PSI had not acquired complete diagnostic source code, makes no sense.  IBM knew that PSI had acquired complete

diagnostics, just as IBM knew Hercules had used the same. And, with respect to both PSI's and Hercules' use of the diagnostics, nothing was concealed from IBM—IBM simply chose to do nothing.[13]

**C.    The Recently Produced Evidence Provided IBM with *Additional* Reasons to Suspect PSI of Having Acquired Complete Diagnostics Because, According to IBM, Amdahl was a Known Misappropriator**

The recently produced documents not only confirm that IBM had no basis to rely on its confidentiality agreements with Amdahl to protect its purported trade secrets, they reveal that IBM had <u>additional reasons</u> to suspect PSI of having acquired complete diagnostic programs.

According to IBM's version of the facts and the law, Amdahl was a known misappropriator. It had permitted Hercules to use the Amdahl diagnostics to create an open source software program whose code is visible to the world. PSI was an Amdahl spin-off that had, according to PSI's March 2001 letter to IBM, acquired all of Amdahl's diagnostic programs and other intellectual property assets. In the face of this knowledge, IBM had *every reason* to suspect PSI of misappropriation. *See Intermedics, Inc.*, 822 F. Supp. at 657 ("[O]nce plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be trusted, plaintiff should know that there is a risk that that defendant will commit additional acts of misappropriation."); *Glue-Fold, Inc.*, 82 Cal. App.4th 1018, 98 Cal. Rptr. 2d 661 at 666 ("'California law assumes that once a plaintiff knows or should know that a particular defendant cannot be trusted with one secret, it is unreasonable for that plaintiff simply to assume that defendant can be trusted to protect other secrets'"). It should

---

[13]   ████████████████████████████████████████████████████████████████

have therefore immediately acted to secure all of its purported trade secrets licensed to Amdahl and to determine to whom else Amdahl had provided the diagnostics. *Cf. Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 525 (N.D.Cal. 2000) ("[The] law impose[s] on plaintiffs 'a responsibility to take prompt and assertive corrective action with respect to *all of [their] interests* whenever [they] detect a fracture in a once confidential relationship.'") (quoting *Intermedics*, 822 F. Supp. at 654) (emphasis added).

Yet IBM did nothing. It ignored PSI's receipt of the diagnostics just as it ignored Hercules' use of the diagnostics. And it failed to ask Amdahl or Fujitsu a single question regarding what was transferred to PSI. ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

Accordingly, there is no genuine issue of material fact as to IBM's notice or diligence. No reasonable juror could conclude that IBM did not have any basis to suspect PSI of acquiring complete diagnostic programs when:

- PSI told IBM in March 2001 that "we have all the assets developed by Amdahl for S/390 development [including] [b]ring-up programs [and] [s]ystem-level diagnostics such as HOT and DIRT";

- PSI told IBM on February 7, 2003 that "[w]e have successfully run Amdahl's system-level diagnostics such as HOT and DIRT to ascertain full compatibility";

- IBM itself accused PSI of misappropriation in March 2005 on the basis of nothing more than PSI's statement that its products were "based on proven systems architecture spun-off from Amdahl"; and

- As we now know, ***IBM had notice since 2001 that*** ██████████████ ████████████████████████████

IBM's claims are clearly barred by Cal. Civ. Code § 3426.1. *See Alamar Biosciences Inc.,* 40 U.S.P.Q. at 1441; *Forcier*, 123 F. Supp. 2d at 526.

## III.   <u>CONCLUSION</u>

The uncontroverted evidence demonstrates that IBM knew back in 2001 that unauthorized parties were using its so-called "TIDA" trade secrets and it did nothing about it. Instead, it continued to entrust Amdahl—a party that, according to IBM's theory, was already egregiously breaching its confidentiality agreements—with its trade secrets. And IBM again sat on its hands when PSI told IBM that it, too, was running Amdahl diagnostics. IBM's inaction is unreasonable as a matter of law. For these reasons, and those set forth in PSI's initial memorandum and reply memorandum, PSI's motion for partial summary judgment should be granted.

Dated: June 10, 2008

SUSMAN GODFREY L.L.P.


By: _____/s/ Jacob W. Buchdahl_____
Stephen D. Susman
Jacob W. Buchdahl
Tibor L. Nagy
SUSMAN GODFREY L.L.P.
654 Madison Ave., 5th Floor
New York, NY 10022
(212) 336-8330

Stephen Morrissey (Pro Hac Vice)
Ryan Kirkpatrick (Pro Hac Vice)
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90069
(310) 789-3100

Attorneys for Platform Solutions Inc.